Nos. 11-1224 and 11-1486 – *Kanawha County Public Library Board, a public corporation*; *West Virginia Board of Education, a public corporation*; *and Dr. Jorea Marple, in her official capacity as Superintendent of Schools of the State of West Virginia v. The Board of Education of the County of Kanawha*

**FILED**

**June 19, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

Benjamin, Chief Justice, dissenting:

Because the majority opinion completely disregards a proper legislative mandate, ignores the precedent of this Court, and has no basis in law or reason, I dissent.

In the case of *County of Kanawha v. W. Va. Bd. of Educ.*, 219 W. Va. 801, 639 S.E.2d 893 (2006), this Court found that the then-applicable statutory provision charging the Kanawha County Board of Education with distributing a part of the proceeds of its annual regular levies to the support of the Kanawha County Public Library violated constitutional equal protection principles. Specifically, this Court held:

> W. Va. Code § 18-9A-12 (1993), to the extent that it fails to provide that a county school board's allocated state aid share shall be adjusted to account for the fact that a portion of the county school board's local share is required by law to be used to support a non-school purpose, violates equal protection principles because it operates to treat county school boards required by law to provide financial support to non-school purposes less favorably than county school boards with no such requirement.

Syl. pt. 6, *id.* This holding was based entirely on the finding that the public library did not serve a school purpose. We made this quite clear in that case by stating:

> When we apply the strict scrutiny test to the present facts, we can find no compelling reason that justifies treating those school boards differently that are charged by law with

1

> applying a portion of their local share to support a *non-school purpose such as a public library.* Clearly, the end result of such unequal treatment is that county school boards charged by law with diverting a portion of their local shares to support *non-school purposes* have less funds from regular tax levies to expend directly on public schools. Simply put, the more than 2.2 million dollars directed each year to the support of the library is money taken from the support of school children in the classrooms of Kanawha County schools. This, in turn, potentially impinges on a school board's ability to provide a thorough and efficient education to its students.

*Id.*, 219 at 807-808, 639 S.E.2d at 899-900 (italics added) (footnote omitted). We stayed the effect of our decision in *County of Kanawha* until the beginning of the next fiscal year to give the Legislature an opportunity to take corrective action by amending the applicable statutes.

The Legislature subsequently took the necessary corrective action by amending the applicable statute to explicitly recognize that the public library serves a legitimate school purpose. In W. Va. Code § 18-9A-11(f) (2008), the Legislature provided:

> To the extent that public schools recognize and choose to avail the resources of public libraries toward developing within their students such legally recognized elements of a thorough and efficient education as literacy, interests in literature, knowledge of government and the world around them and preparation for advanced academic training, work and citizenship, public libraries serve a legitimate school purpose and may do so economically.

It is beyond dispute that the Kanawha County school board chooses to avail itself of the resources of the public library in providing a thorough and efficient education to county

2

public school students. The public library's bookmobile regularly visits schools throughout the county so that students can check out library books.[1] In addition, the public library has placed branches in several public school buildings. For example, the Riverside Public Library housed in Riverside High School is staffed by employees of the Kanawha County Public Library and contains 41,000 items including 23 computers.[2] Because the school board avails itself of the public library and its resources, the public library serves a legitimate school purpose. Therefore, the school board's funding of the library from the school board's budget does not infringe upon the state constitutional right to a thorough and efficient public education. Instead, funding the public library actually furthers the provision of a thorough and efficient education to the county's public school students.

Inexplicably, the majority opinion reaches the opposite conclusion by finding that the school board's support of the public library, which serves a school purpose as explained above, improperly infringes upon the right of county students to a thorough and efficient education. As a result of the holding of the majority opinion, many valuable services offered by the public library now face an uncertain future. For example, due to the loss of the school board's funding for the 2013 and 2014 fiscal year,

---

[1] In March of this year, 2,440 people checked out 3,937 materials from the bookmobile. Shay Maunz, *People love the bookmobile: The mobile library's future is in question, but for now, avid readers are covered,"* Charleston Daily Mail, April 10, 2013 at 1C.

[2] *"Riverside: Not your average branch library,"* @ The Library, a publication of the Kanawha County Public Library System, Summer 2013 and www.kanawhalibrary.org.

the library was forced to cancel the 2013 West Virginia Book Festival. This means fewer books in the hands of young readers. Moreover, the library offers summer reading programs to county students, providing educational opportunities to children who might otherwise consume a steady diet of television and videogames while school is not in session. It would be ironic if the library had to cancel these educational programs due to a lack of funding from the school board, therefore robbing students of summer-time educational opportunities.

In sum, I am troubled by the school board's miserly decision to stop funding the public library. This decision can be characterized only as short-sighted in that it sacrifices the long-term educational benefits of a sufficiently-funded public library system in favor of the school board's short-term benefit of immediate control of a few more dollars of its budget. I am even more troubled, however, that a majority of this Court permitted the school board to carry out its ill-conceived decision. This is especially so in light of the fact that the result reached by the majority is directly contrary to an explicit legislative mandate and precedent of this Court and is completely unsupported by any previously recognized constitutional principle. Accordingly, I dissent.